IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | § | |
| STF, LLC, | § | |
| | § | |
| v. | § | Civ. A. No. 4:16-CV-547 |
| | § | |
| CHRISTOPHER GROTTENTHALER *et al.* | § | |
| | § | |

**DEFENDANT CHRISTOPHER GROTTENTHALER'S
JOINT REPLY IN SUPPORT OF MOTION TO DISMISS PER 31 U.S.C. § 3730(b)(2)**

Defendant Christopher Grottenthaler files this Joint Reply in Support of Motion to Dismiss pursuant to 31 U.S.C. § 3730(b)(2), Federal Rule of Civil Procedure 41(b), and/or this Court's inherent power to sanction bad-faith litigation misconduct, and would respectfully show the Court as follows:

## I. ARGUMENTS AND AUTHORITIES

In his Motion to Dismiss, Mr. Grottenthaler established that Chris Riedel, one of the Relators in this matter,[1] breached the FCA's seal provision as to Mr. Grottenthaler years before the Court ordered unsealing and that relevant factors—the nature of the breach, the relator's willfulness, and reputational harm to the defendant—warrant dismissing this case, but only as to Mr. Grottenthaler. The Government concedes that Relator's book outing Mr. Grottenthaler as a named defendant was an "unauthorized" "breach of the seal," that the Court's partial seal lift prior to the book's publication did not result in disclosure of the *qui tam* as to Mr. Grottenthaler, and that sanctions are appropriate for this type of conduct. (United States Response at 1-2, 10.) But in an effort to

---

[1] Relator's attempts to hide behind the entity he used to file the *qui tam* to avoid sanctions are undermined by his admission in the book that he made the decision to bring the suit and interfaced with the Government.

avoid the most appropriate sanction—dismissal of the Amended Complaint with prejudice—the Government and Relator raise four arguments, none of which have merit.

A. **The Government's decision to intervene in a *qui tam* case under the False Claims Act does not trigger an inviolable safeguard against dismissal for a Relator's egregious and bad-faith seal breach.**

The Government contends in its Response that because "Congress provided in the FCA that '[i]f the Government proceeds with the action, it . . . shall not be bound by an act of the person bringing the action,' . . . the United States as an intervened party and plaintiff is not bound by the relator's failure to comply with the seal, nor is the United States—which complied with the Court's orders—a proper subject of sanctions for the private relator's seal breach." (United States Response at 4.) The Government's novel interpretation of section 3730(c)(1) is both erroneous and contrary to the general rule that relators in intervened cases are entitled to "unrestricted participation" in the matter.

The full language of section 3730(c)(1) of the False Claims Act provides: "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). This language, according to the Fifth Circuit, merely means that, upon intervention, the Government becomes the primary decision maker in how it chooses to prosecute the case. *See United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279, 290 (5th Cir. 1999) (citing § 3730(c)(1) and explaining that, upon intervention, the government gains "some" but not "authoritative control" over the case). This statutory language does not even intimate that upon intervention, the Government's case is instantaneously insulated from dismissal for a relator's willful and bad-faith seal breach, nor does the Government cite any case supporting, much less adopting, its strained interpretation of the FCA's language. Nor is Mr. Grottenthaler aware of any such case. Indeed,

contrary to the Government's argument, sections 3730(c)(2)(C) and (D) of the FCA recognize that relators in intervened cases generally remain "unrestricted" participants in the action. Accordingly, the Court should reject the Relator's novel and incorrect statutory argument.

**B.     In determining whether dismissal is warranted in the wake of a seal breach, courts have consistently considered harm suffered by a defendant, and both the United States Ninth Circuit Court of Appeals in *Lujan* and the United States Supreme Court in *Rigsby* endorsed this approach.**

Between the Government and Relator, their Responses contend that Mr. Grottenthaler has purportedly "ignor[ed]," (United States Response at 6) "failed to disclose," (*id.*), and even "unabashedly" misled (Relator Response at 8) this Court as to both the United States Court of Appeals for the Ninth Circuit's decision in *United States ex rel. Lujan v. Hughes Aircraft Co.*[2] as well as the United States Supreme Court's decision in *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*[3] Specifically, the Government and Relator contend that by arguing reputational harm to a defendant resulting from a relator's seal breach is a factor for this Court to consider when deciding whether that seal breach warrants dismissal of the case, Mr. Grottenthaler has hidden from this Court controlling, relevant, and contrary authority. (United States Response at 6-7); (Relator Response at 8.) These arguments are specious.

Mr. Grottenthaler neither ignored nor hid from this Court relevant, controlling, or contrary authority in arguing that this Court should consider the self-evident reputational harm caused to Mr. Grottenthaler by Relator's seal breach. Both the Government and Relator selectively cite only the portions of the Ninth Circuit's decision in *Lujan* noting that the legislative history underlying the enactment of the FCA's seal provision does not discuss reputational harm to defendants. (United States Response at 6-7); (*see* Relator Response at 6, 7.) From this, the Government and

---

[2] 67 F.3d 242 (9th Cir. 1995).

[3] 137 S. Ct. 436 (2016).

Relator contend that because "the FCA seal exists to protect government investigations" (United States Response at 5) this Court should not even consider the reputational harm Mr. Grottenthaler suffered in deciding whether dismissal is an appropriate sanction for Relator's seal breach. (*See also* Relator Response at 6, 7.) But a full reading of *Lujan* makes apparent that the Government and Relator's interpretation of the decision is incorrect. As the Ninth Circuit explained:

> We do not mean to imply that harm to the defendant is never a relevant consideration when district courts are assessing possible sanctions for failure to comply with seal requirements. As discussed below, harm to the defendant is an appropriate consideration when the district court dismisses under its inherent powers.

67 F.3d at 247, n.4.

Eleven years later, the United States Supreme Court issued its opinion in *Rigsby*, making clear, again, that reputational harm suffered by a defendant as a result of a relator's seal breach may be considered by a district court in determining whether dismissal is the appropriate sanction. 137 S. Ct. at 444. In fact, the Supreme Court went further than *Lujan,* leaving district courts free to consider "the factors articulated in [Lujan] . . . *and other relevant considerations*," including reputational harm to a defendant, even when considering dismissal only under the FCA. *Id.* In *Rigsby*, the Supreme Court affirmed the United States Fifth Circuit Court of Appeals' decision below, holding only that "violating the seal requirement does not mandate dismissal." *Id.* at 442. According to the Court, "the question whether dismissal is appropriate should be left to the sound discretion of the district court." *Id.* at 444. In discussing the exercise of this discretion, the Court explicitly recognized that certain circumstances may very well warrant dismissing a case based on the reputational harm experienced by FCA defendants due to a seal breach. The "Petitioner and its *amici* place[d] great emphasis on the reputational harm FCA defendants may suffer when the seal requirement is violated" in advocating for their rule of automatic dismissal. *Id*. at 444. Responding

directly to this concern, the Supreme Court stated that "even if every seal violation does not mandate dismissal, *that sanction remains a possible form of relief. Id.* (emphasis added). Absolutely nothing about the holding in *Rigsby* is "contrary" to Mr. Grottenthaler's representation to this Court as to the current state of the law. Indeed, in the face of an egregious, willful and bad-faith seal breach by a career relator who knows better, Mr. Grottenthaler advocates for a sanction contemplated by *Lujan* and *Rigsby* themselves.

At bottom, this Court should decline the Government and Relator's invitation to disregard the litany of federal court decisions—*Lujan and Rigsby* included—that have stated a district court may consider reputational harm to a defendant caused by a relator's violation of the FCA's seal provision in deciding whether to dismiss a complaint based on the relator's violation.

**C.   As argued in the Motion to Dismiss, Relator breached the statutory seal provision by disclosing the existence of the instant *qui tam* action against Mr. Grottenthaler, which was not public knowledge until Relator published his book.**

The Government and Relator contend that because "the seal was lifted in part in July 2018, over two years before relator published his book . . . [and because] [t]he existence of the *qui tam* suit was made public in July 2019," (United States Response at 8) "relator's seal breach did not 'incurably frustrate[] the statutory purposes underlying the seal requirements." (*See also* Relator Response at 1-2, 10.) But as the Government concedes earlier in its Response, the *Government* sought to exclude certain defendants—Mr. Grottenthaler included—from the 2019 disclosure of the existence of this case. (*See DOJ Response* at 2 ("In the public filing, the United States noted there were "other defendants in the *qui tam*" action besides THD, *but sought to limit disclosure of those defendants*.") (citing *True Health Diagnostics, LLC v. Azar, II et al.*, 9:19-cv-00110-MJT (July 22, 2019) (emphasis added).) For years, Mr. Grottenthaler's status as a named, individual defendant in this *qui tam* case was unlawfully injected into the public domain against the backdrop

5

of Relator's informed assurances that the Government would intervene and "go after" Mr. Grottenthaler with "lots of evidence and potential witnesses to support the lawsuit." (Motion to Dismiss at 3). Relator's book is itself a textbook example of why district courts may and should consider reputational harm to a defendant in deciding whether a breach of the FCA's seal provision is so egregious as to warrant dismissal of the case.

D. **Relator's violation of the FCA's seal provision was more severe than either seal breach at issue in *Rigsby* or *Lujan*, and the willfulness and bad faith Relator demonstrated far exceeds that which was on display in either *Rigsby* or *Lujan*.**

The Government and Relator contend that the second and third *Lujan* factors—the severity and bad-faith nature of the seal breach—should weigh in their favor because Relator's seal breach "is comparable in severity to, if not less severe than, the publication of *Los Angeles Times* articles in *Lujan* and a 'national broadcast on ABC's 20/20 program' in *Rigsby*," (United States Response at 9); (*see also* Relator Response at 11-15.) and because Relator "mistakenly believed" he could disclose this *qui tam* case in his book and, upon being informed he could not, Relator "immediately . . . took numerous actions . . . to mitigate any impact of his mistaken disclosures." (Relator Response at 2.) Yet again, the Government and Relator favor cherrypicked elements of these cases at the expense of context and accuracy, and Relator's "immediate" response to his "mistaken[ ] belie[f]" were neither intended to fully mitigate nor effective at fully mitigating his willful and egregious seal breach.

In *Lujan*, the Ninth Circuit found the seal breach insufficiently severe to warrant dismissal of the case when the relator "disclos[ed] the existence and nature of her *qui tam* complaint in very general terms." 67 F.3d at 246. The Ninth Circuit further refused to infer bad faith when "nothing in the record indicates whether the disclosures [even] occurred," but merely indicated that "Lujan and her attorney 'said' certain things." *Id.* In *Rigsby*, "none of the disclosures . . . resulted in the

6

publication of the existence of th[e] suit [as to State Farm, the sole defendant in the case,] before the seal was partially lifted." 794 F.3d at 472 (characterizing as "significant" the distinction between the revelation of possible private or public enforcement versus the revelation of the substance underlying allegations of fraud); *Rigsby*, 137 S. Ct. at 441 (explaining: "All three [news] outlets issued stories discussing the fraud allegations, but none revealed the existence of the FCA complaint," and further noting relators had disclosed the existence of the *qui tam* suit to a state congressman, who later spoke out publicly about the nature of the allegations, but not the existence of the FCA suit).

With respect to whether the disclosures were made in bad faith, the Fifth Circuit in *Rigsby* found particularly relevant (1) the absence of any evidence "to suggest that the disclosures . . . were authorized by or made at the suggestion of the Relators," and (2) the absence of any indication "that the [relators] themselves communicated the existence of the suit in the relevant interviews." 794 F.3d at 472. The Fifth Circuit went on to say, "[w]ere we to impute their former attorneys' disclosures to them, however, *we would conclude that they acted in bad faith*."[4] *Id.* (emphasis added).[5]

---

[4] Relator's Response also cites *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-cv-3396, 2015 WL 4389644, at *3 (S.D. Tex. July 15, 2015), arguing that a bad-faith violation of the FCA's seal provision (the relator in *Omnicare* perjured herself during a deposition about the extent of her seal breach) does not warrant dismissal of the case where the other two *Lujan* factors weigh against such a sanction. But Relator fails to highlight the distinctions between the nature of the seal breach at issue in *Omnicare* and his own. While the case remained under seal, the relator in *Omnicare* disclosed the existence and the nature of the lawsuit to her friends and family, totaling fifteen individuals. Some of those individuals then passed on information about the lawsuit to other friends and family. The seal breach at issue in *Omnicare* pales in comparison to the years-long publication and promotion of Relator's book on the worldwide web, readily available for purchase by any member of the public with internet access. *See also Meet the Author-Blood Money-Chris Riedel*, MINDDOG TV (Aug. 18. 2021) (available on YouTube); *Chris Riedel, Xtra Ordinary Experiences, Blood Money*, XPNSION NETWORK (Oct. 15, 2021).

[5] The Government contends that "the FCA seal limits a relator from disclosing the *qui tam* action but does not limit a relator from publicly disclosing the fraud and the wrongdoers." (Government

Relator's violation of the FCA's seal provision stands in stark contrast to the violations at issue in *Lujan* and *Rigsby* as to both the severity of and bad faith underlying his seal breach. Unlike the relators in *Rigsby*, Relator disclosed the existence of the instant *qui tam* case in his book years before the seal was lifted and there was any intimation in the public domain that Mr. Grottenthaler was a named defendant. (Motion to Dismiss at 7-9.) Relator exposed not only the existence of the present suit and Mr. Grottenthaler's status as a named individual defendant, but also his communications with the Government about the underlying case in an attempt to lend additional credibility to the legal claims brought against Mr. Grottenthaler and their likelihood of success. (*Id.*) What is more, on October 15, 2021, at least six weeks after the Government informed Relator that his book constituted a breach of the FCA seal, Relator appeared on a podcast, which remains readily available for viewing on youtube.com, promoting his book and detailing the contents of Chapter 24—including the existence of this *qui tam* case—in utter disregard for his legal obligation, which he was fully aware of at this point, not to do so. *Chris Riedel, Xtra Ordinary Experiences, Blood Money*, XPNSION NETWORK (Oct. 15, 2021).

There is no doubt that Relator—not his attorneys, not his agents, not anyone else—made these disclosures and left them out in the public domain for years with the intention of personally profiting from the disclosure. (*See* Relator Response at 2.) The idea that because Relator's book bombed, raking in miniscule profits well below what he would have hoped, somehow lessens the severity of the seal breach and absolves him from being held accountable is, at best, unpersuasive. And Relator's argument that he acted mistakenly rather than in bad faith is wholly undermined by his continued efforts to promote himself and his book by publicly discussing the very contents of

---

Response at 2.) But here the Relator did both. He breached the seal by disclosing the *qui tam* as to Mr. Grottenthaler and exhibited his willfulness and bad faith by compounding that breach with details of the purported fraud.

Chapter 24—namely, the existence of this *qui tam* suit and his discussions with the Government about its likelihood of success—on at least ***three*** podcasts that aired more than a full month after the Government informed him such conduct constituted a breach of the FCA's seal provision and, as Relator represented to this Court in his Response, he purported to have "[i]mmediately . . . [taken] numerous actions in full cooperation with the government to mitigate any impact of [the] mistaken disclosures."[6] Perhaps Relator will fall back on the low viewership for these interviews just as he has attempted to rely on his abysmal book sales. But willfulness and bad faith are based on the actor's intentions, not his or her results. Indeed, a bank robber leaving a heist empty-handed is just as guilty as a robber that makes out like a bandit.

In sum, because Relator's violation of the FCA seal provision was more severe than the violations at issue in *Lujan* and *Rigsby*, and because Fifth Circuit precedent supports a finding of bad faith on Relator's part, the *Lujan* factors in this case favor Mr. Grottenthaler and, thus, dismissal of the Government's claim is warranted.[7]

---

[6] *Chris Riedel, Xtra Ordinary Experiences, Blood Money*, XPNSION NETWORK (Oct. 15, 2021) (available on You Tube at https://www.youtube.com/watch?v=kJMXx70BsVE); *Chris Riedel: "Blood Money" Exposing Healthcare Fraud and Defrauding American Taxpayers*, JASON ZUK THE SOCIAL PSYCHIC (Oct. 5, 2021) (available on You Tube at https://www.youtube.com/watch?v=r8pNtat8n-Y); *Author Chris Riedel is my very special guest talking about his latest book "Blood Money"!*, THE MIKE WAGNER SHOW (Nov. 1, 2021) (available on You Tube at https://www.youtube.com/watch?v=qWKHJ6AwMCI).

[7] To the extent this Court does not see dismissal as a warranted sanction in this case, this Court may *sua sponte* impose lesser sanctions pursuant to its inherent powers so long as it makes a specific finding that Relator acted in bad faith. *Sciarretta v. Liincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212-13 (11th Cir. 2015); *Arnold v. Fed. Nat'l Mortg. Ass'n*, 569 F. App'x 223, 224 (5th Cir. May 27, 2014) (citing *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998)).

## II. CONCLUSION

For the foregoing reasons, Mr. Grottenthaler asks that this Court dismiss the Government's Amended Complaint and grant Mr. Grottenthaler any and all other relief to which he may be entitled.

Date: June 1, 2022		Respectfully submitted,

**REESE MARKETOS LLP**

By: */s/ Andrew O. Wirmani*
Andrew O. Wirmani (lead counsel)
Texas Bar No. 24052287
andrew.wirmani@rm-firm.com
Allison N. Cook
Texas Bar No. 24091695
allison.cook@rm-firm.com
750 N. Saint Paul St., Ste. 600
Dallas, Texas 75201-3201
Telephone: (214) 382-9810
Facsimile: (214) 501-0731

**ATTORNEYS FOR DEFENDANT
CHRISTOPHER GROTTENTHALER**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on June 1, 2022, the foregoing document was submitted to the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system (CM/ECF) of the court.  I certify that the document was served on all known counsel of record electronically as authorized by Federal Rule of Civil Procedure 5(b)(2).

 */s/ Allison N. Cook*
Allison N. Cook