# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et at.*, § <br> *ex rel.* STF, LLC, § <br> § <br>         *Plaintiffs,* § <br> v. § <br> § <br> TRUE HEALTH DIAGNOSTICS, LLC, § <br> *et al.*, § <br> § <br>         *Defendants.* § | Civil Action No. 4:16-cv-547 <br> Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Christopher Grottenthaler's Motions to Dismiss Per 31 U.S.C. § 3730(b)(2) (Dkt. #93; Dkt. #103). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds that the Motions should be **DENIED**.

### BACKGROUND

This is a False Claims Act ("FCA") lawsuit brought by *qui tam*[1] Relator STF, LLC (Dkt. #1). Defendant Christopher Grottenthaler was the founder and CEO of True Health Diagnostics, LLC ("True Health"), a laboratory that offered cardiovascular disease test panels (Dkt. #26 at ¶¶ 2, 22; Dkt. #98 at ¶ 15). According to Relator's Second Amended Complaint, Grottenthaler directed True Health to engage in various actions that violated the FCA, Anti-Kickback Statutes, and multiple state false claims acts (Dkt. #26 at ¶ 17). Relator initially filed suit in the Central

---

[1] "Qui tam" is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who as well for the king as for himself sues in this mater." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 184 n.5 (5th Cir. 2009) (citing *Black's Law Dictionary* 1262 (7th ed. 1999). A *qui tam* suit is brought by a private person on behalf of the Government to protect the Treasury and aid in rooting out fraud. *Id.* at 184. A *qui tam* relator brings the claim on behalf of the United States to recover monies that were fraudulently paid. *Id.* Under the False Claims Act the Government has the right to intervene and prosecute the suit and the *qui tam* relator is entitled to a portion of the overall recovery as an award. *See id.*

District of California on October 21, 2015 (Dkt. #1). The Complaint was filed under seal and in compliance with the provisions of 31 U.S.C. § 3730 (*See* Dkt. #1). Relator filed its First Amended Complaint on February 24, 2016 (Dkt. #8). The case was transferred to this Court on July 22, 2016, and remained under seal (Dkt. #1–1; Dkt. #9). On June 5, 2017, Relator filed its Second Amended Complaint (Dkt. #26). The Government sought a partial lift of the seal, which the Court granted on July 11, 2018 (Dkt. #35). The Government alerted the Court on August 19, 2021, that Relator had breached the partial seal when one of its members, Christopher Riedel, published a book and disclosing the existence of this *qui tam* lawsuit prior to the Government's intervention (Dkt. #50; Dkt. #93-2; Dkt. #103-1). On September 20, 2021, the Government provided the Court an update on the Relator's seal breach (Dkt. #52). The Government filed its Original Intervention Complaint on January 31, 2022 (Dkt. #57).

In response to the seal breach by Relator, Defendant Christopher Grottenthaler filed his Motion to Dismiss per 31 U.S.C. § 3730(b)(2) on May 13, 2022 (Dkt. #93). The Government filed its First Amended Complaint against multiple Defendants, including Grottenthaler, on May 25, 2022 (Dkt. #98). That same day, the Government filed its Response to Grottenthaler's Motion to Dismiss (Dkt. #99). On May 26, 2022, Relator filed its Response to Grottenthaler's Motion to Dismiss (Dkt. #102). To ensure that his Motion was not mooted by the Government's Amended Complaint, Grottenthaler refiled his Motion to Dismiss per 31 U.S.C. § 3730(b)(2) on May 31, 2022, which was the same as his previous Motion (Dkt. #103). The next day, he filed his Reply to the Government's and Relator's Responses (Dkt. #108). The Government filed another Response directed at Grottenthaler's refiled Motion on June 8, 2022 (Dkt. #127). Grottenthaler filed another Reply to the Government's Response on June 13, 2022 (Dkt. #136). Relator filed a Response to

2

Grottenthaler's refiled Motion on June 14, 2022 (Dkt. #138). On July 6, 2022, the Court stayed the civil proceedings in this case until the concurrent criminal proceedings were resolved (Dkt. #174). The stay automatically expired upon the resolution of the criminal proceedings and this action is now proceeding (*See* Dkt. #211).

## LEGAL STANDARD

The False Claims Act requires that a "copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the government." 31 U.S.C. § 3730(b)(2). The original complaint must be filed in camera and remain under seal until the court orders it served on the defendant. *Id.* The primary purpose of the seal provision is to protect the Government's interests. *See State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 37 (2016) (citing S. Rep. No. 99–345, pp. 23–24 (1986)). In the Fifth Circuit, the relevant time period to consider for a seal breach is the period between the filing of the complaint and the partial seal lift. *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 471 (5th Cir. 2015). The analysis for a seal breach looks at the disclosures of the existence of the suit itself, not disclosures of the underlying allegations. *Id.*

A violation of the seal by the relator can lead to the dismissal of the suit. *See Rigsby*, 580 U.S. at 37. However, dismissal is a harsh remedy and the False Claims Act does not mandate dismissal on a seal violation. *Id.* at 33. Thus, to determine the appropriate course of action when the relator breaches the court's seal, the court should apply the tripart test outlined in *Lujan*: (1) the actual harm to the government; (2) the severity of the violations; and (3) the evidence of the relator's bad faith. *Id.* (citing *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245–47 (9th

Cir. 1995)); *Rigsby*, 794 F.3d at 471; *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-cv-3396, 2015 WL 4389644, at *2 (S.D. Tex. July 15, 2015).

Federal Rule of Civil Procedure 41(b) allows a defendant to move to dismiss the action or claim if the plaintiff fails to prosecute, comply with the Rules of Procedure, or to comply with a court order. However, dismissal with prejudice is a sanction of last resort and should only be used when a lesser sanction would not better serve the interests of justice. *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994); *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 251 (5th Cir. 1984). Generally, the Fifth Circuit does not use dismissal with prejudice as a sanction where the plaintiff failed to comply with court orders or rules. *See, e.g.*, *Berry v. Cigna/RSI-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992); *Zellmar v. Warden, Gurney Unit*, 810 F. App'x 340, 341 (5th Cir. 2020).

Likewise, federal courts possess the inherent power to sanction bad faith litigation misconduct. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–44 (1991). While dismissal of a suit is within the Court's inherent power, the sanction of dismissal must be exercised with restraint and discretion. *Id.* at 44–45. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.*

## ANALYSIS

On February 14, 2019, the Court partially lifted the seal on the case at the Government's request (Dkt. #34 Dkt. #35). On August 19, 2021, the Court was alerted by the Government that Relator had breached the seal (Dkt. #50). This seal breach is the basis for Grottenthaler's Motion to Dismiss (*See* Dkt. #93; Dkt. #103). Relator breached the seal when Riedel, one of Relator's two members, published a book that disclosed (1) the existence of this *qui tam*, (2) the *qui tam* was under seal, and (3) lodged specific allegations against Grottenthaler (Dkt. #93-2; Dkt. #103-1).

4

Relator does not contest that Riedel breached the seal (Dkt. #102; Dkt. #138). In response to the seal breach, Grottenthaler now moves to dismiss the Government's action against him (Dkt. #93; Dkt. #103). He argues that the Court should dismiss on one of three grounds: (1) under the seal provisions found in 31 U.S.C. § 3730(b)(2); (2) under Federal Rule of Civil Procedure 41(b) as a failure to comply with a Court order; or (3) under the Court's inherent power (*See* Dkt. #93; Dkt. #103). The Court will address each of these arguments in turn.

## I.     31 U.S.C. § 3730(b)(2) Seal Breach Dismissal

### A.     Harm to the Government

The first *Lujan* factor evaluates the actual harm to the Government and is the primary focus when considering dismissal under a violation of the seal provision in 31 U.S.C. § 3730. *See Rigsby*, 580 U.S. at 34–35; 67 F.3d at 245. The Supreme Court has clarified that a seal breach by a relator does not normally warrant dismissal once the Government has intervened because such a dismissal would subvert the intent of the FCA. *Rigsby*, 580 U.S. at 33–38. Here, Grottenthaler entirely omits an evaluation of the harm to the Government in his Motion and his subsequent responses (*See* Dkt. #93; Dkt. #103; Dkt. #108; Dkt. #136). Additionally, the Government has already intervened in this suit and states that it was not severely harmed by the breach (Dkt. #99 at p. 8; Dkt. #127 at pp. 9–10). Thus, the Court finds that the first factor heavily weighs against dismissal because any harm to the Government was minimal. *See id*.

### B.     Severity of the Violations

The second *Lujan* factor evaluates the severity of the seal breach violations. 67 F.3d at 246. Grottenthaler does not directly address this point. Instead, he focuses on the harm to his reputation from the seal breach and the extent of Riedel's bad faith in breaching the seal (*See* Dkt. #93; Dkt. #103; Dkt. #108; Dkt. #136). The Government states (1) Relator initially complied with the FCA

5

by properly filing this suit under seal, and (2) that the small success of Riedel's book shows that the violation was not serious enough to warrant dismissal (Dkt. #99 at pp. 8–10). *See, e.g.*, *Rigsby*, 580 U.S. at 31–38 (holding dismissal was not warranted when the relator's attorney disclosed the existence of the *qui tam* to the various news outlets in violation of a partial seal). The Court agrees with the Government. Although any seal breach is a serious matter, the severity of this breach was relatively small and, overall, did not impact the Government's case. Thus, the Court finds this factor weighs against dismissal.

    C.    **Bad Faith**

The third *Lujan* factor evaluates the evidence of bad faith. Grottenthaler spends much of his focus on this factor (*See* Dkt. #93; Dkt. #103; Dkt. #108; Dkt. #136). Grottenthaler points specifically points to excerpts from Riedel's book and webpage to support his argument of bad faith (*See* Dkt. #93; Dkt. #103; Dkt. #108; Dkt. #136). Of note, Grottenthaler points out:

1. Riedel brags about using *qui tam* actions to obtain "verdicts and settlements totaling more than $550 million and counting." (Dkt. #93 at p. 2; Dkt. #103 at p. 2).
2. Chapter twenty-four of Riedel's book specifically references this *qui tam*, outlining his allegations and stating that this *qui tam* suit was under seal at the time (Dkt. #93 at p. 3; Dkt. #103 at p. 3).
3. That the Government may pursue criminal charges against Grottenthaler and others (Dkt. #93 at p. 4; Dkt. #103 at p. 4).
4. That Riedel's website represents he is one of "the top medical whistleblowers ever" and lists at least five *qui tam* lawsuits he was centrally involved with (Dkt. #93 at p. 8; Dkt. #103 at p. 8; Dkt. #93-4; Dkt. #103-4).
5. Riedel sought to personally profit off of disclosing this *qui tam* by publishing and promoting his book, *Blood Money: One Man's Bare-Knuckle Fight to Protect Taxpayers from Medical Fraud* (Dkt. #93 at p. 8; Dkt. #103 at p. 8).

6

6. Riedel disclosed the existence of this *qui tam* suit years before the seal was lifted and there was any information in the public domain (Dkt. #108 at p. 8).

7. On October 15, 2021, approximately six weeks after the Government informed Relator that Riedel's book constituted a breach of the FCA seal, Riedel appeared on a podcast promoting the book and detailing the contents of Chapter twenty-four (Dkt. #108 at p. 8).

8. Riedel appeared on at least three podcasts that aired more than a month after the Government informed him of the seal breach to discuss his book (Dkt. #108 at p. 9).

The Government does not condone Relator's decision to breach the seal and took prompt steps to notify him of the breach (Dkt. #99 at p. 9). While the Government opposes dismissal, it does suggest that the Court could impose a lesser sanction on Relator for the seal breach (Dkt. #99 at p. 9; Dkt. #127 at pp. 11–12). Relator argues that the breach was not done in bad faith, but rather by mistake (Dkt. #102 at pp. 13–14; Dkt. #138 at p. 14). According to Relator, Riedel mistakenly believed that he could discuss the existence and nature of this *qui tam* suit because the Government discussed this action after the partial seal lift in public filings in a different case (Dkt. #102 at pp. 13–15; Dkt. #138 at pp. 14–15).

While the Court understands why Riedel claims that he was mistaken, his bravado about his experience with *qui tam* lawsuits cuts directly against his claim that he made a mistake. For one of the "top medical whistleblowers ever," Riedel is undoubtedly familiar with the process of a *qui tam* suit and knew that any disclosures prior to the lifting of the Court's seal would require the Court's approval (Dkt. #93-4; Dkt. #103-4). Further, Riedel's seal breach, at a minimum, cannot be considered a good faith mistake, as he utilized his position to violate the Court's seal and to seek personal profit—all while claiming to be someone intimately familiar with the process of a *qui tam* suit (*See* Dkt. #93-4; Dkt. #103-4). Ultimately, the Court finds that Riedel has familiarity with the

process of a *qui tam* suit and it is inconceivable he would believe publishing a book discussing a sealed *qui tam* lawsuit would be appropriate.

Even though the Court finds a considerable lack of good faith on Riedel's part, his actions are no more egregious than other instances where courts found a lack of bad faith. *See, e.g.*, *Lujan*, 67 F.3d at 246 (finding the relator did not act in bad faith even when disclosing the allegations and existence of the *qui tam* complaint in general terms to the *Los Angeles Times*); *Rigsby*, 580 U.S. at 34–38; *Rigsby*, 794 F.3d at 472. Further, even when court's have found bad faith violations of the *qui tam* seal, those Court's still denied dismissal. *United States ex rel. Bibby v. Wells Fargo Home Mortg. Inc.*, 76 F. Supp. 1399, 1402–17 (N.D. Ga. 2015) (holding dismissal was not appropriate despite bad faith disclosures to news outlets with significant updates about the status of the case); *Ruscher*, 2015 WL 4389644, at *3 (holding that the relator acted in bad faith when she perjured herself about the seal violations but that dismissal was still unwarranted); *Rigsby*, 794 F.3d at 472 (holding that dismissal would still be unwarranted warrant even if the court presumed bad faith from the seal breach). At most, the Court finds that the seal breach should be appropriately considered when determining the amount of Relator's award, should the Government recover in this suit. *See, e.g.*, *Ruscher*, 2015 WL 4389644, at *3 (noting that district courts have discretion in setting a relator's award and can approve a lower award when considering the relator's misconduct); *United States ex rel. Koo v. GS Caltex*, No. 2:18-cv-174, 2020 WL 8477217, at *6–7 (S.D. Ohio Mar. 23, 2020) (sanctioning the relator for failing to comply with the FCA seal provisions by reducing the relator's share of the award by 2.5%). Dismissal, however, is unwarranted at this time. *See Rigsby*, 580 U.S. at 34–38.

### D. Reputational Harm to Defendant

An additional consideration for dismissal is the reputational harm incurred by an FCA defendant due to the seal breach. *See Rigsby*, 580 U.S. at 37. Grottenthaler repeatedly argues that he suffered grave reputational harm because of Riedel's book (Dkt. #93 at pp. 7–10; Dkt. #104 at pp. 7–10). Specifically, he claims that Riedel was able to destroy his reputation by calling him a "fraudster" who was "no stranger to Medicare fraud," without providing Grottenthaler any avenue to respond (Dkt. #93 at pp. 9–10; Dkt. #103 at pp. 9–10). However, Grottenthaler omits any support for his arguments that he actually suffered any harm. Throughout his Motions he states he suffered harm, but he does not point the Court to the way in which Riedel's opinions in *Blood Money* actually harmed him (Dkt. #93 at pp. 7–10; Dkt. #103 at pp. 7–10). Further, even though Riedel's allegations may be considered harmful, the breach of the FCA seal does not focus on the Relator's opinions, but rather on the disclosure of the *qui tam* suit itself. *See Rigsby*, 794 F.3d at 471 (citing *Am. C.L. Union v. Holder*, 673 F.3d 245, 254 (4th Cir. 2011)) ("The seal provisions limit the relator only from publicly discussing the filing of the *qui tam* complaint. Nothing in the FCA prevents the *qui tam* relator from disclosing the existence of the fraud."). While the Court has no doubt that Grottenthaler may have suffered some harm, that harm was limited due to the small success the book and by the fact that he has not articulated any severe harm that would warrant consideration of the harsh sanction of dismissal. Accordingly, in spite of Grottenthaler's impassioned pleas of reputational harm, dismissal is not warranted.[2]

---

[2] Grottenthaler did not seek any lesser sanctions, opting instead for an "all or nothing" approach to the seal breach (*See* Dkt. #93; Dkt. #103). Had he done so, the Court may have considered those sanctions. *See Rigsby*, 580 U.S. at 37–38. However, the Court does not find imposing *sua sponte* monetary sanctions appropriate at this time and will instead consider the seal breach in conjunction with any award Relator may receive from this case.

## II.     Fed. R. Civ. P. 41(b) Dismissal

Grottenthaler briefly argues that the Court should dismiss the suit under Federal Rule of Civil Procedure 41(b) (Dkt. #93 at p. 7; Dkt. #103 at p. 7). To support this argument, he echoes the arguments made in support of dismissal under 31 U.S.C. § 3730(b)(2), specifically focusing on Riedel's bad faith breach of the seal (Dkt. #93 at p. 7; Dkt. #103 at p. 7). The Government argues that dismissal under Rule 41 is inappropriate because Grottenthaler failed to meet the burden of dismissal under § 3730 (Dkt. #99 at pp. 10–11; Dkt. #127 at pp. 12–13). Likewise, Relator also argues that a dismissal under Rule 41 is inappropriate at this time (Dkt. #102 at pp. 15–18; Dkt. #138 at pp. 15–18). The Court agrees with the Government and Relator that dismissal under Rule 41(b) is inappropriate under the circumstances. The Court has already found that dismissal under § 3730 is inappropriate and contrary to the purpose of the FCA and Supreme Court precedent. *See supra* Section I; *Rigsby*, 580 U.S. at 29–38. Thus, the Court likewise finds that dismissal under Rule 41 is not warranted at this time. *See Bibby*, 76 F. Supp. at 1411–12.

## III.    Court's Inherent Power

Grottenthaler also calls upon the Court to use its inherent power to dismiss the suit (Dkt. #93 at p. 7; Dkt. #103 at p. 7). The Government and Relator oppose dismissal on this ground for the same reasons advanced in opposition of the prior two grounds (Dkt. #99 at pp. 11–13; Dkt. #102 at pp. 15–18; Dt. #127 at pp. 13–15; Dkt. # 138 at pp. 15–18). The Court has already found that dismissal under § 3730 and Rule 41(b) is inappropriate. *See supra* Section I–II. Thus, the Court finds that the appropriate course is to exercise its discretion and refrain from dismissing the action under its inherent powers. *Chambers*, 501 U.S. at 44–45. A dismissal under the Court's inherent powers would be inapposite in the current situation where the Supreme Court has held that a seal breach does not warrant a dismissal if the *Lujan* factors are not met. *See Rigsby*, 580 U.S. at 34–38.;

10

*Bibby*, 76 F. Supp. at 1412. Accordingly, the Court finds dismissal unwarranted under all three avenues and Grottenthaler's Motion to Dismiss is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Christopher Grottenthaler's Motions to Dismiss Per 31 U.S.C. § 3730(b)(2) (Dkt. #93; Dkt. #103) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 30th day of May, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE