# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> *ex rel.* STF, LLC, § <br> § <br> *Plaintiffs,* § <br> v. § <br> § <br> TRUE HEALTH DIAGNOSTICS, LLC, § <br> *et. al.*, § <br> § <br> *Defendants.* § | Civil Action No. 4:16-cv-547 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Sam Fillingane, DO's Motion to Dismiss Relator's Second Amended Complaint (Dkt. #238). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**. The Court further finds that Relator's request to amend its Complaint should be **GRANTED**.

## BACKGROUND

This is a False Claims Act ("FCA") lawsuit brought by *qui tam* Relator STF, LLC (Dkt. #1). According to Relator's Second Amended Complaint (the "Complaint"), True Health Diagnostics, LLC ("True Health"), was a laboratory that offered cardiovascular disease test panels (Dkt. #26 at ¶¶ 2, 22; Dkt. #98 at ¶ 15). Defendant Sam Fillingane, DO, was True Health's Chair and Director of Medical Education (Dkt. #26 at ¶ 24). Fillingane allegedly engaged in various actions that violated the FCA, Anti-Kickback Statutes ("AKS"), and multiple state false claims acts (Dkt. #26 at ¶ 17). Specifically, the Complaint alleges that Fillingane led the kickback scheme by paying physicians for monthly phone calls with him and for leading True Health's allegedly "sham" Advisory Board (Dkt. #26 at ¶¶ 24, 72). Additionally, the Complaint alleges that

Fillingane participated in True Health's fraudulent scheme to submit unnecessary test panels (*See* Dkt. #26).

Relator initially filed suit under seal and in compliance with the provisions of 31 U.S.C. § 3730 in the Central District of California on October 21, 2015 (Dkt. #1). Relator filed its First Amended Complaint on February 24, 2016 (Dkt. #8). The case was transferred to this Court on July 22, 2016 (Dkt. #1–1; Dkt. #9). On June 5, 2017, Relator filed its Second Amended Complaint (Dkt. #26). On January 31, 2022, the Government intervened in this suit against some Defendants, but not against Fillingane (*See* Dkt. #26; Dkt. #31). On March 26, 2025, Fillingane filed a 12(b)(6) Motion to Dismiss Relator's Second Amended Complaint against him (Dkt. #238). Relator filed its Response on April 8, 2025 (Dkt. #245). Fillingane filed a Reply on April 15, 2025 (Dkt. #252). On April 22, 2025, Relator filed its Sur-Reply (Dkt. #257).

## LEGAL STANDARD

### I.      12(b)(6) Motion to Dismiss

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.     FCA Violations and Federal Rule of Civil Procedure 9(b)

Claims brought under the False Claims Act are fraud claims that must comply with Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453

3

(5th Cir. 2005). Rule 9(b) is a heightened pleading standard that requires parties to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). Rule 9(b) "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009).

However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186. Pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted). The Fifth Circuit requires plaintiffs to "specify the statements intended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). Therefore, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Stephenson v. Archer W. Contractors, L.L.C.*, 548 F. App'x. 135, 139 (5th Cir. 2013) (citing *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

That said, the traditional "time, place, contents, and identity standard is not a strait jacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190. Rule 9(b) "is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim[s] Act." *Id.* Therefore, "a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard[.]" *Id.* at 188. However, "[f]ailure

4

to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Williams v. McKesson Corp.*, No. 12-0371, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

### III. False Claims Act

The False Claims Act "is the Government's 'primary litigation tool' for recovering losses resulting from fraud." *U.S. ex rel. Marcy v. Rowan*, 520 F. 3d 384, 388 (5th Cir. 2008). The Act establishes liability for "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claims; [or] (C) conspires to commit a violation of [the FCA]." 31 U.S.C. § 3729(a)(1)(A)-(C). "Generally, in considering liability under the FCA, the Fifth Circuit focuses on '(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that cause the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *United States v. Vista Hospice Care, Inc.*, 2016 WL 3449833, at *16 (N.D. Tex. June 20, 2016) (citing *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012)).

### IV. Anti-Kickback Statute Violations as a False Claims Act Violation

"Under a false certification theory, a defendant may be liable where a claimant 'falsely certifies compliance with a statute or regulation.'" *Vista Hospice Care*, 2016 WL 3449833, at *16 (quoting *Grubbs*, 565 F.3d at 188). As such, "[a] violation of the AKS can serve as a basis for a FCA claim when the Government has conditioned payment of a claim upon the claimant's certification of compliance with the statute, and the claimant falsely certifies compliance." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x. 890, 894 (5th Cir. 2013) (citing *Thompson*, 125 F.3d

5

at 903). In such a case, "[t]he elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim." *Id.* (citing *U.S. ex rel. Bennett v. Medtronic*, 747 F. Supp. 2d 745, 760, 783–85 (S.D. Tex. 2010)). "To show an AKS violation, a relator must [adequately plead][1] that a defendant: (1) knowingly and willfully (2) solicited or received, or offered or paid remuneration (3) in return for or to induce, referral or program-related business." *Vista Hospice Care*, 2016 WL 3449833, at *21 (citing 42 U.S.C. § 1320a-7b(b)(1)-(2)).

## ANALYSIS

Fillingane moves to dismiss Relator's Complaint against him based on the pleading standards set out in Rule 9(b) of the Federal Rules of Civil Procedure (Dkt. #238). Fillingane argues that Relator's Complaint contains two conclusory paragraphs that fail to explain how he was involved in the fraudulent scheme that violated the FCA or AKS (Dkt. #238 at pp. 4–8). Specifically, Fillingane argues that Relator has not pleaded the who, what, where, when, and how, of his involvement in the alleged fraudulent scheme in compliance with Rule 9(b) (Dkt. #238 at pp. 5–8). While Fillingane agrees that Relator implicated him in the Compliant by lumping him in with the other Defendants, he challenges that Relator has not alleged anything specific against him to explain his role in the fraudulent scheme, nor how his specific actions constituted any violation of the FCA or AKS (Dkt. #238 at pp. 4–8). Additionally, Fillingane agues that Relator did not allege that he knowingly engaged in the fraudulent conduct (Dkt. #238 at pp. 7–8). Thus, Defendant argues that Relator's Second Amended Complaint should be dismissed against him (Dkt. #238 at p. 8).

---

[1] The Court replaces prove with plead because this is a motion to dismiss as opposed to a motion for summary judgment.

6

Relator responds by arguing that it complied with the requisite pleading standards and that the Complaint alleges detailed aspects of Defendant's involvement in the scheme (Dkt. #245). Primarily, Relator argues that the Complaint should be read as a whole, such that all claims against Defendants apply to Fillingane, in addition to the specific allegations against him (*See* Dkt. #245). As part of its argument, Relator lays out the who, what, where, when, and how of Fillingane's involvement in the scheme, relying on the paragraphs that specifically discuses Fillingane and using the more specific allegations found against Defendants to fill in any missing specificity (*See* Dkt. #245 at pp. 10–13). In concluding its Response, Relator asks the Court to grant leave to amend its Complaint should it find the Complaint does not meet the pleading standards under Rule 9(b) (Dkt. #245 at p. 16).

In his reply, Fillingane presents three arguments (*See* Dkt. #252). First, he argues that Relator's Response attempts to add non-pleaded factual allegations to fill in the gaps in the Complaint's allegations so that it can defeat his Motion to Dismiss (Dkt. #252 at pp. 1–2). Second, he argues that Relator did not plead with particularity because the Complaint lumps him together with the other Defendants and fails to explain his role in the fraudulent scheme (Dkt. #252 at pp. 3–6). Finally, he argues that Relator has not made any allegation that he knowingly submitted false claims or provided kickbacks (Dkt. #252 at pp. 7–8). In its Sur-Reply, Relator argues that the Court must examine the Complaint as a whole, not just the specific allegations against Fillingane (Dkt. #257). After making this argument, Relator returns to similar arguments that look at the entirety of the Complaint to fill in the gaps of specific conduct by Fillingane, in an attempt to show that it has pleaded with the requisite particularity to survive a 12(b)(6) challenge (Dkt. #257).

To survive a 12(b)(6), the Complaint must show the who, what, where, when, and how of the specific fraudulent actions of Fillingane. *Stephenson*, 548 F. App'x. at 139. While the standard is not a "straitjacket" and Relator can survive 12(b)(6) by showing the particular details of the scheme through a reliable indicia that leads to a strong inference the false claims were actually submitted. *Grubbs*, 565 F.3d at 190. In relation to Fillingane, Relator has not pleaded the particular details of his involvement in the scheme, nor a reliable indicia that leads to the strong inference that he submitted false claims or engaged in illegal kickbacks.

Beginning with the Complaint, the Court notes that it primarily assails all Defendants with the same conduct (*See* Dkt. #26). To successfully levy allegations against all defendants in an FCA suit, the relator must also provide specific allegations against each individual defendant. *See United States ex rel. Capshaw v. White*, No. 3:12-cv-4457-N, 2018 WL 606806, at *4–5 (N.D. Tex. Nov. 20, 2018) (citing *In re Parkcentral Glob. Litg.*, 884 F. Supp. 2d 464, 470–71 (N.D. Tex. 2012); *see also Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986). To do so, the specific allegations must show an individual defendant's alleged wrongdoing with enough specificity that the Complaint does more than make sweeping allegations against all defendants for the same conduct without any explanation as to what each individual defendant's role in the fraudulent scheme. *See Capshaw*, 2018 WL 606806, at *4–5. Thus, the Court continues with its analysis by reviewing the specific allegations against Fillingane to determine if those allegations meet Rule 9(b)'s pleading requirements for FCA and AKS violations. *See id.*

Here, Relator specifically alleges Fillingane performed the following acts:

> 1. He led True Health's kickback scheme by dispensing cash to physician clients for a monthly phone conversation with him (Dkt. #26 at ¶ 24).

8

> 2. He refers a "considerable" amount of Medicare Medicaid, and other government funded healthcare business to True Health (Dkt. #26 at ¶ 24).
>
> 3. True Health pays him to influence other physicians to refer Medicare, Medicaid, and other government funded healthcare business to it (Dkt. #26 at ¶ 24).
>
> 4. He heads True Health's "Advisory Board," which paid physicians to move their business to True Health in exchange for an advisor fee (Dkt. #26 at ¶ 72).
>
> 5. After accepting the position as True Health's Chair and Director of Medical Education, and head of the Advisory Board, he moved his laboratory testing to True Health (Dkt. #26 at ¶ 72).

Outside of these specific allegations, Fillingane is only implicated in the scheme as a member of Defendants (*See* Dkt. #26). In other words, outside of these specific allegations against Fillingane, the Complaint "lumps" him together with the other Defendants. *Capshaw*, 2018 WL 606806, at *4–5.

Regarding the details of the scheme, Relator's allegations have two primary shortcomings. First, the specific allegations against Fillingane are general allegations (*See* Dkt. #26). Relator has not discussed how Fillingane carried out dispensing kickbacks, who the other physicians were, the content of the conversations during the phone calls, how long they would last, and how much the physicians would be paid (*See* Dkt. #26 at ¶¶ 24, 72). Second, Relator has not alleged how Fillingane's conduct is different from making routine medical decisions (*See* Dkt. #26 at ¶¶ 24, 72). *See United States v. Baylor Scott & White Health*, No. 5:17-cv-886-DAE, 2019 WL 3713756, at *5 (W.D. Tex. Aug. 5, 2019) (citing *Iqbal*, 556 U.S. at 678) ("[N]othing in Plaintiff's complaint implicates a conclusion that these targeted efforts requested, demanded, or encouraged doctors and staff to diagnose in a way that was not justified by the physicians own medical opinions, judgments, and the medical record, beyond Plaintiff's mere conclusion that that is what the efforts

9

reveal."). If Fillingane violated the FCA and AKS, Relator must plead how he did so, when he did it, who he did it with, and where it occurred, or it must demonstrate a strong inference of fraud through a sufficient indicia of reliability. *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 893–95 (5th Cir. 2013).

Ultimately, Relator has not provided a reliable indicia that would lead to the strong inference Fillingane submitted false claims (*See* Dkt. #26). The shortcomings of the Complaint become clear when comparing it to *Grubbs*. In *Grubbs*, the Fifth Circuit held that "if [a relator's complaint] cannot allege the details of an actually submitted false claim, [it] may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. In doing so, the Fifth Circuit also held that the relator's complaint had enough reliability to meet Rule 9(b)'s requirement because the relator provided a detailed, first-hand account of his interactions with the fraudsters. *Id.* at 191–92. Specifically, the relator alleged how two doctors explained the scheme to him and invited him to join in the scheme. *Id.* at 184, 191–92. Additionally, he also alleged how nurses at the hospital offered to assist him in acting in the same fraudulent manner as the other physicians. *Id.*

Here, Relator has not alleged the same level of interaction with Fillingane (*See* Dkt. #26). *See id.* In fact, the only mention of how Relator knew of the scheme is that "Relator, STF, LLC is a limited liability company, whose members are involved in the laboratory industry." (Dkt. #26 at ¶ 20). While involvement in the laboratory industry may provide Relator with some knowledge of the scheme, the Complaint goes no further to establish any other reliable indicia that would lead to the strong inference that Fillingane acted in violation of the FCA or AKS. The personal

10

interactions found in *Grubbs* are not present in Relator's Complaint. Thus, the Court is left with neither the who, what, when, where, or how of the fraudulent scheme, nor a reliable indicia that leads to the strong inference that Fillingane was involved in the specific manner alleged (*See* Dkt. #26). *See id.* Accordingly, Relator has not satisfied Rule 9(b). *Id.* at 190–92; Fed. R. Civ. P. 9(b); *Stephenson*, 548 F. App'x. at 139; *see also Capshaw*, 2018 WL 606806, at *4–5.

However, while the Court finds his Motion to Dismiss should be granted, it also finds that Relator should be granted leave to amend to correct the pleading deficiencies. Leave to amend should be freely given when justice so requires. *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). Further, the Fifth Circuit encourages District Courts to permit amendment of pleadings when it grants a 12(b)(6). *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000). Accordingly, as the Court has found that Realtor did not meet the pleading requirements for FCA and AKS violations against Fillingane, it finds that Relator's request to amend should be granted.

## CONCLUSION

It is therefore **ORDERED** that Defendant Sam Fillingane, DO's Motion to Dismiss Relator's Second Amended Complaint (Dkt. #238) is hereby **GRANTED**.

It is further **ORDERED** that Relator's request for leave to amend is hereby **GRANTED**. Relator shall file an amended complaint within fourteen days from the date of this Order. If Relator fails to file an amended complaint within fourteen days, its claims against Defendant Sam Fillingane, DO will be dismissed with prejudice.

**IT IS SO ORDERED.**
**SIGNED this 30th day of May, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE